OPINION
{¶ 1} Defendant-appellant, Marshall W. Patterson, appeals from a judgment of the Preble County Court of Common Pleas, Domestic Relations Division, granting a divorce to him and his former wife, plainitiff-appellee, Marilyn J. Patterson.
 {¶ 2} The parties were married in 1994. No children were born as issue of their marriage. In September 2002, appellee forced appellant to leave their marital residence. On September 18, 2002, appellee filed a complaint for divorce on grounds of incompatibility. Appellant responded by filing an answer and counterclaim.
 {¶ 3} On August 23, 2004, a trial was held on the unresolved issues between the parties. On September 15, 2004, the trial court issued a decision granting each of the parties a divorce on the grounds of incompatibility and deciding the unresolved issues. On November 3, 2004, the trial court issued a decree of divorce, confirming its prior decision.
 {¶ 4} Appellant now appeals from the divorce decree, assigning the following as error:
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO EQUITABLY DIVIDE THE MARITAL PROPERTY OF THE PARTIES BY FAILING TO IDENTIFY AND DIVIDE THE PARTIES [sic] HOUSEHOLD GOODS AND FURNISHINGS."
 {¶ 7} Appellant argues that the trial court abused its discretion by failing to identify and equitably divide the parties' household goods and furnishings. We disagree with this argument.
 {¶ 8} In divorce proceedings, a trial court is obligated to determine what constitutes marital property and what constitutes separate property, and then divide the property equitably between the spouses. R.C. 3105.171(B). "Marital property" means all real and personal property currently owned by either or both spouses. R.C. 3105.171(A)(3)(a). "Separate property" includes any real or personal property acquired by one spouse prior to the marriage. R.C. 3105.161(A)(6)(a)(ii). Marital property must be divided equally unless an equal division would be inequitable, in which case the property must be divided equitably rather than equally. R.C. 3105.171(C). Generally, separate property must be disbursed to the spouse who owns it. R.C. 3105.171(D).
 {¶ 9} A trial court's division of marital property is reviewed under an abuse of discretion standard. Martin v.Martin (1985), 18 Ohio St.3d 292, 294. An abuse of discretion exists only when the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. The trial court's division of property should be viewed as a whole in determining whether the court divided the parties' marital assets in an equitable and fair manner. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. In reviewing the trial court's decision, an appellate court may not substitute its judgment for that of the trial court. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131.
 {¶ 10} In this case, the trial court disbursed any item of the parties' household goods and furnishings that constituted separate property to the party who owned it. The trial court divided the remainder of the household goods and furnishings, which were marital property, on an equitable, rather than equal basis. Thus, the trial court implicitly found that an equal division of those items would be inequitable under the circumstances of this case. See. R.C. 3105.171(C).
 {¶ 11} Appellant argues that the trial court abused its discretion by "refus[ing] to consider evidence necessary to evenidentify the subject marital property much less attempt to equitably divide it." In support of this argument, he points to remarks the trial court made during his counsel's cross-examination of appellee regarding the parties' household goods and furnishings. Specifically, appellee testified that the parties had bought a couch, and there were curios "bought * * * for gifts." She also testified that the parties had a big screen TV, and that there may be another one "at the shop." When appellant's counsel introduced photographic exhibits of the parties' household goods and furnishings, the trial court and appellant's counsel had the following exchange:
 {¶ 12} "THE COURT: Wait a minute. What are we doing with these photos? What's the point?
 {¶ 13} "[Appellant's counsel]: Your Honor —
 {¶ 14} "THE COURT: Because I'm not going to listen — your question about * * * what's at the house that was not marital is fine because I'm not going to divide non-marital property. But I'm not going to listen to[:] we have a TV here, we've got a TV there, we've got these couches. * * *
 {¶ 15} "I am not going to listen to what property these people own in the house. It's not going to happen."
 {¶ 16} "[Appellant's counsel]: Yes, Your Honor. Just let me, let me move ahead." Could I ask one question in regards to our car collection that has significant value?"
 {¶ 17} "THE COURT: To what?
 {¶ 18} "[Appellant's counsel]: * * * There is * * * a miniature car collection that fills an entire curio cabinet that has significant value. If I could ask one question about that, I would move on from that.
 {¶ 19} "THE COURT: Go ahead."
 {¶ 20} When appellant's counsel attempted to show appellee a photograph of the miniature car collection, appellee stopped him, saying, "You don't have to show me the picture. He can have them. They're his."
 {¶ 21} In its decision, the trial court found that with respect to the parties' household goods, the bedroom suite is appellee's premarital property and that the miniature car collection is appellant's nonmarital property. The trial court ruled that "[e]ach party shall retain his or her jewelry and items of a personal nature"; that appellant "shall have his tools, wherever located"; and that "[t]he remaining personal property is awarded to the party presently in possession of the same."
 {¶ 22} Appellant argues that the trial court abused its discretion by refusing to consider the evidence necessary to identify and equitably divide the parties' marital property. We disagree with this argument.
 {¶ 23} A review of the portions of the trial transcript quoted above shows that appellant failed to object to the trial court's refusal to listen to any additional testimony regarding the parties' household goods and furnishings. In fact, appellant's counsel's only response to the trial court's statement to which he is now objecting on appeal was to request permission to ask appellee about the miniature car collection — request which the trial court granted. Furthermore, neither party sought to introduce any evidence regarding the value of any of the parties' household goods or furnishings.
 {¶ 24} We conclude that under these circumstances, the trial court did not abuse its discretion in deciding, implicitly, to divide the parties' household goods and furnishings on an equitable, rather than equal, basis. Among other things, the parties had been separated for approximately two years at the time that the trial court divided their marital assets; the trial court did disburse all separate property to its rightful owner; neither party provided the trial court with any evidence to allow the court to approximate the value of the household goods and furnishings; and appellant failed to raise a timely objection to the trial court's refusal to hear any additional evidence regarding the parties' household goods and furnishings.
 {¶ 25} Appellant's first assignment of error is overruled.
 {¶ 26} Assignment of Error No. 2:
 {¶ 27} "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO EQUITABLY DIVIDE THE PARTIES [sic] BUSINESS AND REAL PROPERTY."
 {¶ 28} Appellant argues that the trial court abused its discretion by not awarding him the parties' marital residence. We disagree with this argument.
 {¶ 29} Prior to the parties' marriage, appellee purchased a residence on Sandhurst Drive in Montgomery County, Ohio ("the Sandhurst property). After they were married, the parties lived there until they moved to another residence on Salem Road in Preble County, Ohio. At that time, the residence in Preble County became the parties' marital residence and they rented the Sandhurst property to tenants. Both parties' names were placed on the mortgages for both residences and marital funds were used to pay the mortgages on those properties. At the time of the parties' divorce, the Sandhurst property had equity of approximately $10,800, while the marital property had equity of less than $1,000.
 {¶ 30} In 2002, appellant started a business called Dayton Spray Sales and Service, with $20,000 of the business's start-up costs coming from appellant's retirement funds, and another $30,000 coming from a loan appellant obtained from a local bank. Appellant sold 49 percent of Dayton Spray's stock to a partner, Norm Davis, who never paid appellant for the stock. Sometime in 2001, appellant transferred his remaining 51 percent interest in Dayton Spray to appellee. The reasons for the transfer were never made entirely clear by appellant, but they appear to have something to do with a life-threatening surgery that appellant had to undergo. Appellant worked at Dayton Spray until September 2002, when appellee and Davis terminated appellant's employment.
 {¶ 31} In its decision, the trial court noted that with respect to the Sandhurst property, the parties used marital funds to pay the mortgage payments due thereon. However, the trial court found that no evidence had been presented to allow the court to determine "specifically how much the principal [due on the residence] was reduced using marital funds." Under these circumstances, the trial court refused to "speculate" on the extent of appellant's marital interest in the Sandhurst property, and, instead, awarded that property to appellant as her separate, nonmarital property.
 {¶ 32} The trial court also rejected appellant's claim that he had an interest in the Sandhurst property because appellee had "wasted" one of the parties' marital assets, namely, Dayton Spray, through her mismanagement of the company after he had transferred it to her. The trial court found that appellant had failed to prove this claim. The trial court also awarded the marital residence to appellee, upon finding that appellant "had not contributed towards the payment of the two mortgages, taxes, or upkeep" during the two-year period after he was forced to leave the marital residence. The trial court awarded the business to appellant, to the extent there was any value remaining in it.
 {¶ 33} Appellant now argues that the trial court abused its discretion in dividing these assets because the trial court gave appellee both houses while giving him, in return, a business that was rendered "valueless" under appellee's stewardship. We find this argument unpersuasive.
 {¶ 34} Initially, the trial court did not abuse its discretion or otherwise err in finding the Sandhurst property to be appellee's nonmarital, separate property. That property was purchased by appellee prior to the parties' marriage; therefore, that property, as well as any "passive appreciation" in the property's value that occurred during the marriage, was appellee's separate property, pursuant to R.C. 3105.171(A)(6)(ii) and (iii).
 {¶ 35} The Ohio Supreme Court has held that "[u]nder R.C.3105.171, an increase in the value of separate property due to either spouse's efforts is marital property." Middendorf v.Middendorf, 82 Ohio St.3d 397, 1998-Ohio-403, syllabus. More specifically, the Middendorf court stated that "[t]he plain language of R.C. 3105.171(A)(3)(a)(iii) unambiguously mandates that when either spouse makes a labor, money, or in-kind contribution that causes an increase in the value of separate property, that increase in value is deemed marital property." (Emphasis sic.) Middendorf at 400.
 {¶ 36} In this case, the evidence showed that marital funds were used to pay the mortgage payments due on the Sandhurst property. However, as the trial court noted, there was no evidence presented to show how much the principal owed on the Sandhurst property was reduced by these payments. Under these circumstances, the trial court was, as it stated, left to speculate as to the extent of appellant's marital interest in the Sandhurst property. Under these circumstances, we cannot say that the trial court abused its discretion or otherwise erred in finding the Sandhurst property to be appellee's separate, nonmarital property.
 {¶ 37} As to appellant's claim that appellee "wasted" a marital asset, i.e., Dayton Spray, we agree with the trial court that appellant failed to present sufficient evidence to prove this claim.
 {¶ 38} "R.C. 3105.171(E)(3) permits a court to compensate one spouse with a distributive award or a greater award of marital property if the court finds the other spouse has engaged in financial misconduct, including the dissipation, destruction, concealment or fraudulent disposition of assets." Babka v.Babka (1992), 83 Ohio App.3d 428, 435.
 {¶ 39} In this case, the trial court stated that it did not know what happened to Dayton Spray because neither party offered any evidence on that issue. Additionally, appellant failed to present sufficient evidence to support his claim that appellee mismanaged the company. In fact, it appears that appellee made very few decisions in connections with the business, other than to discharge appellant after he had engaged in an extramarital affair. A review of the evidence shows that appellant failed to demonstrate that appellee engaged in misconduct that would have entitled appellant to either a distributive award with respect to the Sandhurst property, or to be awarded the marital residence.
 {¶ 40} As to the marital residence, which has equity of less than $1,000, the trial court awarded the residence to appellee after finding that appellant had not resided in the marital residence for two years, and had "not contributed towards the payment of the two mortgages, taxes or upkeep during that time period." Appellant argues that he should have been awarded the marital residence as a result of appellee's having received the Sandhurst property, and as a result of the fact that Dayton Spray was rendered "valueless," as a result of appellant's management of the company.
 {¶ 41} However, as we have stated, the trial court properly found that the Sandhurst property was appellee's separate, nonmarital property. Furthermore, appellant failed to present sufficient evidence to show that it was appellee's acts or omissions that caused Dayton Spray to have little or no value.
 {¶ 42} Appellant's second assignment of error is overruled.
 {¶ 43} Assignment of Error No. 3:
 {¶ 44} "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO COMPENSATE APPELLANT, FOR APPELLEE'S DISSIPATION, MISUSE, CONCEALMENT AND UNLAWFUL LIQUIDATION OF MARITAL PROPERTY AND THE SEPARATE PROPERTY OF APPELLANT."
 {¶ 45} Appellant argues that the trial court abused its discretion by failing to compensate him for appellee's alleged "dissipation, misuse, concealment and unlawful liquidation of marital property" and his separate property. He points to eight instances of wrongful conduct on appellee's part, which, he asserts, entitle him to compensation.
 {¶ 46} First, he asserts that appellee "disposed of [his] three trailers without [his] permission and in direct violation of the trial court's restraining order[.][1] We disagree with this argument.
 {¶ 47} The evidence showed that the trailers were purchased after the parties were married. The trailers were left at the marital residence when appellant was forced to leave the residence in September 2002. Appellee sold the trailers for $800, which she then used to make payments on the parties' mortgages on the Sandhurst property and their marital residence.
 {¶ 48} Appellant essentially argues that the trailers were his separate property and, therefore, the trial court should have compensated him for appellee's selling them. However, the only evidence he presented to show that the trailers were his separate property was that two of the three trailers were titled in his name; the third trailer was not titled in anyone's name.
 {¶ 49} R.C. 3105.171(H) states, in pertinent part, that "the holding of title to property by one spouse individually * * * does not determine whether the property is marital property or separate property."
 {¶ 50} In this case, appellant failed to prove that the trailers were his separate property. Consequently, the trial court did not abuse its discretion or otherwise err in not compensating him for appellee's selling them.
 {¶ 51} The second and third items mentioned by appellant are his 1996 van and 1965 truck and trailer. He alleges that appellee concealed, disposed of, or failed to make payments on these vehicles, and that he should be compensated, as a result. We disagree with this argument. Appellant never presented any evidence regarding the value of these vehicles or the loss he allegedly sustained regarding them. Consequently, the trial court cannot be found to have abused its discretion or otherwise erred in not compensating appellant for these vehicles.
 {¶ 52} The fourth, fifth and sixth items mentioned by appellant involve allegations that appellee "mismanaged Dayton Spray" after she had discharged him; failed to pay the taxes and the line of credit [he had obtained] in connection with Dayton Spray; and "cut off [his] income from Dayton Spray and directed the same to her daughter." However, none of these allegations were supported by sufficient evidence to show that appellee engaged in financial misconduct or how much money appellant lost as a result of the alleged misconduct. Therefore, the trial court cannot be found to have erred or abused its discretion in failing to compensate appellant for appellee's alleged misconduct in operating Dayton Spray.
 {¶ 53} The seventh item raised by appellant involves appellee's cancellation of his health insurance benefits without his permission and in violation of the restraining order, causing appellant to be without health insurance for a period of time. However, appellant has failed to identify any loss that he sustained as a result of this action. Therefore, he was not entitled to any compensation for this action.
 {¶ 54} The eighth and final item mentioned by appellant is that appellee allegedly refused to permit him access to his personal possessions or refused to permit him to take at least some of the furnishings with him when she forced him to leave the marital premises. But once again, appellant has failed to present any evidence regarding what amount, if any, he lost as a result of appellant's alleged misconduct. Therefore, the trial court did not abuse its discretion or otherwise err in not compensating him for it.
 {¶ 55} Appellant's third assignment of error is overruled.
 {¶ 56} The trial court's judgment is affirmed.
Young and Bressler, JJ., concur.
[1] After the initial pleadings were filed in this case, the trial court issued, at appellant's request, a temporary restraining order forbidding appellee from, among other things, "[s]elling, transferring, disposing of, hypothecating, encumbering, removing from the marital premises, or otherwise affecting the value of the items of personal property acquired by either or both parties and now in the possession or in the custody, care or control of the [appellee]."