[Cite as *State v. Wilson*, 2019-Ohio-338.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-03-022 |
| | : | O P I N I O N |
| - vs - | | 2/4/2019 |
| | : | |
| ZACKARY WILSON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32666

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, OH 45036, for appellee

Thomas G. Eagle Co., L.P.A., Thomas G. Eagle, 3400 N. State Route 741, Lebanon, OH 45036, for appellant

**M. POWELL, J.**

{¶ 1} Defendant-appellant, Zachary Wilson, appeals his conviction and sentence in the Warren County Court of Common Pleas for murder and improperly discharging a firearm into a habitation.

{¶ 2} In December 2016, appellant lived in a trailer with his girlfriend, Emily Turner ("Turner"). Toward the end of the month, appellant allowed Allison Moore ("Moore") and

her cousin, Jeremy Foxx ("Foxx"), to stay in the trailer with them. Appellant and Moore had dated in the past. Moore had introduced appellant to Foxx in November 2016. Turner had never met Moore or Foxx. Appellant owned a Micro Draco pistol-grip AK-47 and a black Taurus 9mm handgun. The 9mm handgun held 12 rounds in the magazine and one in the chamber, totaling 13 rounds. Turner also owned an identical black Taurus 9mm handgun.

{¶ 3}   From December 23, 2016, to December 25, 2016, appellant, Moore, and Foxx used methamphetamine daily and rarely slept. The interaction between the three was often testy and marked by bickering, arguing, paranoia, and high tension. During these three days, appellant kept pacing around and taking out his firearms and cleaning them. Eventually, the trio's drug use became a point of contention between appellant and Turner. Appellant told Turner he would get Foxx and Moore out of the trailer.

{¶ 4}   On Christmas Day 2016, Turner left for work at 2:30 p.m. Shortly after, appellant, Moore, and Foxx left the trailer in appellant's black extended-cab pick-up truck. Appellant claimed that Foxx forced him and Moore into the truck. Appellant further claimed that Foxx put the AK-47 and appellant's 9mm handgun into a bag that accompanied them in the truck. During the course of the afternoon and evening, the trio went to several places, stopping at convenience stores to purchase items, at friends' homes to purchase drugs, and at a McDonald's. Sometimes all three would exit the truck; at other times, only appellant or Foxx would exit the truck. Sometimes appellant drove the truck; at other times Foxx drove it. Throughout the stops, some of which were depicted on store surveillance video recordings, there was no indication that appellant and Moore were held by Foxx against their will.

{¶ 5}   During the evening, the trio stopped at the home of Preston Cole ("Cole"), a family friend of Foxx. Foxx went inside the home and talked to Cole for 20 minutes or so. Appellant and Moore stayed in the truck. Cole did not observe any firearm on Foxx. As

Foxx was leaving the house, Cole followed him, approached the truck, and briefly talked to appellant who was in the passenger seat. Appellant showed Cole his AK-47. Moore, who was in the backseat, showed him a 9mm handgun. The trio then left Cole's house.

{¶ 6} Eventually, the trio went to the home of Brian Raby ("Raby") to buy methamphetamine. They gave Raby $50 to purchase the drug, drove to a McDonald's to buy food, then drove back to Raby's house to pick up the methamphetamine. Foxx was driving the truck at that time. While on their way back to Raby's, appellant claimed that Foxx reached down into the driver's door pocket to retrieve the 9mm handgun. Appellant pinned Foxx against the driver's door with his left arm, grabbed his AK-47, and shot Foxx several times. One of the rounds fired by appellant entered the nearby home of Tammy Calhoun, traveled through a front room, and lodged into a back wall. Foxx was fatally wounded. At Moore's suggestion, appellant pushed Foxx out of the trunk onto the road. Appellant then turned around to look for the 9mm handgun. Unable to locate the handgun, appellant fled the scene with Moore. The handgun was later recovered by the police at the scene. It was fully loaded and had not been fired.

{¶ 7} Appellant and Moore subsequently attempted to clean up the blood in the truck. They then put a ladder rack on the back of the truck and painted a silver stripe around the truck in an effort to disguise it. Appellant threw away his cellphone and fled to his grandfather's house in Kentucky.

{¶ 8} Upon hearing Foxx was dead, Cole called the police and advised them of what he knew. He further provided them with a photograph Foxx had sent him days earlier. The photograph showed appellant and Foxx standing together in the bed of appellant's truck. The truck's license plate was clearly visible. Appellant's mother eventually convinced appellant and Moore to return to Ohio. She picked them up in Kentucky and drove them to the Warren County Sheriff's Office where appellant was arrested. Appellant was then

- 3 -

interviewed by the lead detective and another officer. Appellant admitted shooting and killing Foxx but claimed he acted in self-defense.

{¶ 9} In January 2017, appellant was indicted with one count of murder, two counts of felony murder, two counts of felonious assault, one count of improperly discharging a firearm at or into a habitation, and one count of tampering with evidence. With the exception of the evidence tampering count, all other counts contained two firearm specifications. A four-day jury trial was held in January 2018. Calhoun, Cole, the lead detective, and a master evidence technician deputy sheriff testified on behalf of the state. Appellant's mother, Moore, and Turner testified on behalf of appellant.

{¶ 10} Raby had been subpoenaed to testify on behalf of appellant but did not appear before the close of the case. After some substantial delay and unsuccessful efforts in trying to locate Raby, the trial court proceeded with the trial. Following the parties' closing arguments, Raby finally appeared. Outside the presence of the jury, the trial court allowed a proffer of his testimony which described Foxx as acting a little bit erratic and strange, Moore as acting a little weird, and appellant as acting normal when the trio came to Raby's house. The state did not cross-examine. The trial court then reopened the case to allow the jury to view Raby's demeanor while testifying. After Raby testified that Foxx was acting very strangely, was very hyperactive, and moving around a lot, the state was allowed to cross-examine him. Following Raby's testimony, the trial court gave its jury instructions.

{¶ 11} On January 31, 2018, the jury found appellant guilty on all charged counts and firearm specifications. A sentencing hearing was held in March 2018. Upon merging several counts and firearm specifications, the trial court sentenced appellant to 20 years to life in prison for murder and improperly discharging a firearm into a habitation.

{¶ 12} Appellant now appeals, raising three assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT "DEFENDANT CLAIMS" THE BASIS FOR A LESSER INCLUDED OFFENSE.

{¶ 15} Appellant requested jury instructions on self-defense and voluntary manslaughter. Consequently, the trial court instructed the jury on voluntary manslaughter as follows: "*The Defendant claims* that at the time of the offense, he acted knowingly while under the influence of a sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by Jeremy Foxx that was reasonably sufficient to incite the Defendant into using deadly force." (Emphasis added.) Appellant unsuccessfully objected to the trial court prefacing the instruction in such a manner. On appeal, appellant argues that the jury instruction prejudicially identifies him as the party who requested the instruction.

{¶ 16} Jury instructions "must be given when they are correct, pertinent, and timely presented." *State v. Joy*, 74 Ohio St.3d 178, 181 (1995). We review a trial court's jury instructions for an abuse of discretion. *State v. Davis*, 12th Dist. Madison No. CA2015-05-015, 2016-Ohio-1166, ¶ 28. An appellate court may not reverse a conviction in a criminal case based upon jury instructions unless "it is clear that the jury instructions constituted prejudicial error." *Id.*

{¶ 17} It is error for a trial court to identify to the jury which party requests a certain instruction. *State v. Stanton*, 15 Ohio St.2d 215 (1968), paragraph one of the syllabus. A trial court's "statement that such an instruction is given at the request of a party is likely to indicate to the jury that it is not as much an instruction of the court as are other parts of the court's charge." *Id.* at 216. "'When a special instruction is given at the request of a party, it is not given as an instruction of such party but as an instruction of the court itself and becomes the law of the case.'" *Id.*, quoting *Rosenberry v. Chumney*, 171 Ohio St. 48, 51 (1960).

{¶ 18} We find that the trial court's voluntary manslaughter jury instruction did not offend the rule adopted in *Stanton*. Notwithstanding appellant's assertion to the contrary, the jury instruction does not identify appellant as the party who requested the instruction, nor does it indicate in any respect that the instruction was requested by appellant. Rather, it merely indicates that the instruction was justified by appellant's contention he acted "under the influence of a sudden passion or in a sudden fit of rage." A trial court must fully and completely give jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact-finder. *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus.

{¶ 19} We further note that the trial court's voluntary manslaughter jury instruction is identical to the one contained in the Ohio Jury Instructions. *See Ohio Jury Instructions*, CR Section 503.02(6)(B) (Rev. Feb. 24, 2007). The language used by the trial court was therefore in accordance with the Ohio Jury Instructions.

{¶ 20} Appellant's first assignment of error is overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING APPELLANT AFTER NUMEROUS BUT CUMULATIVE ERRORS.

{¶ 23} Appellant argues that cumulative errors by the trial court implicated his right to a fair trial, entitling him to a reversal of his convictions. Specifically, appellant asserts that the trial court erred in allowing (1) Calhoun to testify as to how the stray bullet entering her home affected her and her family, (2) Cole to testify he was feeling bad in hindsight for not doing more to prevent Foxx from leaving his house knowing there were firearms in appellant's truck, (3) a deputy sheriff to testify that a significant wound on Foxx's left index finger "could be a defensive wound," (4) other witnesses to testify about "general opinions and conclusions without limiting those to any degree of certainty, as normally would be

required," (5) the lead detective to testify as to whether appellant was truthful and made sense during his interview, and (6) the state to argue during closing arguments that appellant requested a voluntary manslaughter jury instruction because he did not have faith in his self-defense argument.

{¶ 24} We note with disapproval appellant's shotgun approach of raising several, unrelated issues under the guise of cumulative errors in one assignment of error, instead of properly raising specific issues in separate assignments of error. *See* Loc.R. 11(B)(3).

{¶ 25} Under the doctrine of cumulative errors, a reviewing court "will reverse a conviction when the cumulative effect of errors deprives a defendant of a fair trial even though each of the instances of trial-court error does not individually constitute cause for reversal." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, ¶ 140. Harmless or nonprejudicial errors cannot become prejudicial by sheer weight of numbers alone. *See State v. Hill*, 75 Ohio St.3d 195, 212 (1996). In addition, "[i]t is not enough simply to intone the phrase 'cumulative error.'" *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 197. Without analysis or explanation as to why or how the errors have had a prejudicial effect, an assignment of error claiming cumulative errors has no substance. *Id.*; *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, ¶ 103.

{¶ 26} We note that appellant did not object to any of the foregoing testimony. Consequently, he has waived all but plain error. *State v. Jalowiec*, 91 Ohio St.3d 220, 226 (2001). Plain error does not exist unless the error is obvious and, but for the error, the outcome of the trial would clearly have been different. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996); *State v. Liming*, 12th Dist. Clermont Nos. CA2018-05-028 and CA2018-05-029, 2019-Ohio-82, ¶ 35. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Liming* at ¶ 35.

{¶ 27} We decline to address the alleged improper admission of unspecified "general opinions and conclusions" from several witnesses. Other than a reference to several pages in the transcript of the jury trial, including a reference to "etc.," appellant does not specify what the opinions or conclusions were and how they denied him a fair trial. It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. *State v. Howard*, 12th Dist. Warren No. CA83-07-048, 2002-Ohio-3983, ¶ 22. "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *State v. Watson*, 126 Ohio App.3d 316, 321 (12th Dist.1998). *See also Waters v. Boney*, 5th Dist. Stark No. 2008-CA-00127, 2009-Ohio-574.

{¶ 28} Upon thoroughly reviewing the record, we find no plain error in allowing Calhoun and Cole to testify as set forth above. Given the ample evidence of appellant's guilt, we cannot say that but for the error, the outcome of the trial would clearly have been different. Moreover, defense counsel's failure to object to Calhoun's testimony may well have been reasonable trial strategy. *See State v. Boeddeker*, 12th Dist. Clermont No. CA2009-05-029, 2010-Ohio-106, ¶ 18. Had defense counsel objected to Calhoun's testimony, it may have negatively impacted the jury's opinion of appellant. *Id.* at ¶ 19.

{¶ 29} We likewise find no plain error in allowing the deputy sheriff to testify about the wound on Foxx's left index finger. At the time of her testimony, the deputy was describing photographs taken at the crime scene, including that of Foxx's left hand. Based upon her training and experience in shooting reconstruction, the deputy testified that the wound "could be a defensive wound," as she had seen similar defensive wounds many times. While defense counsel did not object to that testimony, he did challenge it on cross and recross-examination during which the deputy conceded the wound could have been caused while Foxx was holding the 9mm handgun. Consequently, we cannot say that but for the error, the outcome of the trial would clearly have been different.

{¶ 30} "A police officer's opinion that an accused is being untruthful is inadmissible." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, ¶ 122. We find no plain error in allowing the lead detective's testimony regarding whether appellant was truthful during his interview and whether his statements made sense. During his interview, appellant claimed that Foxx forced him and Moore into appellant's truck against their will and put appellant's AK-47 and 9mm handgun into a bag that accompanied them while they stopped at various places, including convenience stores. Based upon surveillance videos from the convenience stores and Cole's statements to the police, the prosecutor asked the detective whether the foregoing evidence supported appellant's statements he was forced to go with Foxx who had control of the firearms. The detective replied, "No, it doesn't." Upon being asked whether appellant was "being truthful at that time," the detective replied, "I don't believe so." Contrary to appellant's assertion, the detective's testimony did not relate to appellant's truthfulness. Rather, the detective simply testified that appellant's statements were not consistent with the evidence the detective discovered and utilized in his investigation. *See State v. Mitchell*, 7th Dist. Columbiana No. 05 CO 63, 2008-Ohio-1525, ¶ 27.

{¶ 31} During his interview, appellant further claimed he was able to prevent Foxx from firing the 9mm handgun by simply leaning and pushing against Foxx, without grabbing the handgun or controlling Foxx's left arm. At trial, the prosecutor asked the lead detective, "Does that make sense to you?" The detective replied, "It doesn't." He then clarified his reply by stating, "I would assume that one round would at least or two would have gotten off in that type of situation." As stated above, the recovered 9mm handgun was fully loaded and had not been fired. Contrary to appellant's assertion, the detective's testimony did not relate to appellant's truthfulness. Rather, the detective simply testified that appellant's statements were not consistent with the evidence the detective discovered in his investigation. *See Mitchell.*

{¶ 32} Finally, appellant challenges the prosecutor's assertion during closing arguments that appellant, not the state, requested a voluntary manslaughter jury instruction because he did not have faith in his self-defense argument. Appellant asserts that such comments prejudicially attributed the jury instruction to him.

{¶ 33} The prosecutor's comments were made during the rebuttal portion of the state's closing argument. In response to defense counsel's argument that the evidence clearly established self-defense, the prosecutor first listed that which does not excuse someone from killing another, such as paranoia from drug use. The prosecutor then listed the charges against appellant before stating, "No one talked about voluntary manslaughter. No one talked about aggravated assault. We're not asking you to consider that." The prosecutor continued by describing the voluntary manslaughter instruction the trial court was going to give the jury, and then argued,

> There has been zero evidence in this case that [appellant] was provoked by [Foxx] into a fit of a rage. * * * There's nothing in this case about that. What this is is a request by the Defense to say if you don't believe self-defense, well at least consider other charges. In fact, those two defenses are contradictory to each other[.] * * * Remember again that words alone are insufficient to provoke deadly force. Intoxication is not a defense. Disregard these things. Reject these things. They want you to excuse the murder of Jeremy Foxx. Do not do it.

{¶ 34} "In presenting its argument the [s]tate may go beyond the scope of a defendant's closing argument." *State v. Chinn*, 2d Dist. Montgomery No. 11835, 1991 Ohio App. LEXIS 6497, *16 (Dec. 27, 1991). Thus, because the voluntary manslaughter jury instruction was to be given by the trial court, the prosecutor was not required to wait until defense counsel mentioned it, which he did not, before discussing it. *Id.* Contrary to appellant's assertion, the prosecutor did not specifically attribute the voluntary manslaughter jury instruction to appellant. Reviewing the challenged statement in context plainly shows that the prosecutor did not use the word "request" to refer to the voluntary

- 10 -

manslaughter instruction. Rather, the prosecutor used the word "request" to refer to defense counsel's argument that in the event the jury did not believe appellant acted in self-defense, then the offense appellant committed was voluntary manslaughter. The prosecutor then suggested to the jury all the reasons for why defense counsel's argument should be rejected. The prosecutor did not suggest or imply that appellant did not have faith in his self-defense argument. We therefore find no plain error.

{¶ 35} Under this assignment of error, appellant further lists the "curious handling of the missing and then not-missing witness," the "mass repeated confusions over the jury instructions," defense counsel's "inadequate trial preparation," and the fact that "[j]ury instructions were clearly not reviewed in advance and were worse than unclear." Appellant suggests that these could be errors but does not set forth specific arguments regarding these matters or how the alleged errors have had a prejudicial effect. Rather, he summarily asserts that "separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together," that "cumulative error asserting ineffective assistance of counsel exists when * * * the cumulative effect of counsel's conduct meets the *Strickland* standard," and that "these cumulative problems implicate [a]ppellant's right to a fair trial."

{¶ 36} As stated above, "[i]t is not enough simply to intone the phrase 'cumulative error.'" *Bethel*, 2006-Ohio-4853 at ¶ 197. Without analysis or explanation as to why or how the errors have had a prejudicial effect, an assignment of error claiming cumulative errors has no substance. *Id.*; *Sapp*, 2004-Ohio-7008 at ¶ 103. Furthermore, it is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error. *Howard*, 2002-Ohio-3983 at ¶ 22.

{¶ 37} Because appellant has not demonstrated multiple errors, let alone cumulative errors, we find that the doctrine of cumulative error is inapplicable and provides no basis for reversal. Appellant's second assignment of error is overruled.

{¶ 38} Assignment of Error No. 3:

{¶ 39} THE TRIAL COURT ERRED IN CONVICTING APPELLANT OF IMPROPERLY DISCHARGING A FIREARM INTO AN OCCUPIED STRUCTURE.

{¶ 40} Appellant presents two issues for review under this assignment of error. Appellant first argues that his conviction for improperly discharging a firearm into a habitation is not supported by sufficient evidence and is against the manifest weight of the evidence. Appellant further argues that the trial court erred in failing to merge his conviction for improperly discharging a firearm into a habitation with his murder conviction at sentencing because the offenses were allied offenses of similar import.

{¶ 41} Appellant was indicted for improperly discharging a firearm at or into a habitation in violation of R.C. 2923.161(A)(1), which provides that "[n]o person, without privilege to do so, shall knowingly [d]ischarge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual." The jury found appellant guilty as charged. However, both the conviction entry and the sentencing judgment entry contain a clerical mistake in that both entries state that appellant was found guilty of improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(2).

{¶ 42} Pursuant to Crim.R. 36, "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." A trial court may issue a nunc pro tunc entry "to correct clerical mistakes so that the sentencing entry accurately reflects what the court actually decided." *State v. Goodwin*, 12th Dist. Butler No. CA2016-05-099, 2017-Ohio-2712, ¶ 45, citing *State ex rel. Womack v. Marsh*, 128 Ohio St.3d 303, 2011-Ohio-229, ¶ 13. We therefore remand this case to the trial court for the limited purpose of issuing a nunc pro tunc entry to correct the conviction entry and a nunc pro tunc entry to correct the sentencing judgment entry to reflect the offense of improperly discharging a firearm into a habitation

- 12 -

for which appellant was convicted. *Goodwin* at ¶ 46.

{¶ 43} We now address appellant's two issues for review. Appellant first argues that his conviction for improperly discharging a firearm into a habitation is not supported by sufficient evidence and is against the manifest weight of the evidence because the state failed to prove he knowingly shot at Calhoun's house. Appellant asserts it was mere happenstance that one of the stray shots fired at Foxx entered a home.

{¶ 44} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry in reviewing a claim of insufficient evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 70.

{¶ 45} To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 17. An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18.

{¶ 46} The culpable mental state for the offense of discharging a firearm into a habitation is "knowingly." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such

circumstances probably exist." R.C. 2901.22(B). To act knowingly, a defendant merely has to be aware that the result may occur. *State v. Fultz*, 12th Dist. Butler No. CA2015-06-103, 2016-Ohio-1486, ¶ 14.

{¶ 47} After viewing the evidence in a light most favorable to the prosecution, we find that appellant's conviction for improperly discharging a firearm into a habitation was supported by sufficient evidence. Appellant fired an AK-47 at Foxx multiple times as they were slowly driving down a residential street. Appellant was in the passenger seat, Foxx was in the driver seat. The driver's window was down. An aerial view of the neighborhood where the shooting took place shows that houses close to one another line the street on both sides. Testimony at trial indicated that at least one of the nearby houses was only 14 feet away from the street. A reasonable trier of fact could conclude that appellant was aware that discharging a powerful firearm multiple times from inside a vehicle in a residential area would probably result in one of the bullets missing Foxx, exiting the truck through the open driver's window, and hitting or entering a nearby house. *See State v. Hillen*, 5th Dist. Fairfield No. 04 CA 65, 2005-Ohio-6193.

{¶ 48} Appellant's conviction for improperly discharging a firearm into a habitation is likewise not against the manifest weight of the evidence. We cannot say that the jury lost its way and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. *Bradbury*, 2016-Ohio-5091 at ¶ 17.

{¶ 49} Appellant further argues that the trial court erred in failing to merge his conviction for improperly discharging a firearm into a habitation with his murder conviction at sentencing because the offenses were allied offenses of similar import.

{¶ 50} Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Conrad*, 12th Dist. Butler No. CA2018-01-016, 2018-Ohio-5291, ¶ 43. If any of the following occurs, the

defendant may be convicted and sentenced for multiple offenses: "(1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, and (3) the offenses were committed with separate animus or motivation." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 26.

{¶ 51} "At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* An appellate court applies a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 28. "The defendant bears the burden of establishing his entitlement to the protection provided by R.C. 2941.25 against multiple punishments for a single criminal act." *Conrad* at ¶ 44.

{¶ 52} Appellant argues the offenses are allied offenses of similar import and should have been merged at sentencing because "[t]here was no separate intent or animus toward [Calhoun] or the random house." In support of his argument, appellant cites *State v. Hodges*, 1st Dist. Hamilton No. C-110630, 2013-Ohio-1195; and *State v. Walton*, 5th Dist. Stark No. 2011 CA 00214, 2012-Ohio-2597.

{¶ 53} In *Hodges*, the First Appellate District held that convictions for attempted felonious assault and attempted improper discharge of a firearm at or into a habitation should have been merged at sentencing because Hodges committed each offense with the same conduct of quickly firing multiple shots toward the victim and an apartment building at the same time. *Hodges* at ¶ 11. In *Walton*, the Fifth Appellate District held that because the murder count was expressly based on the theory that the victim's death was the proximate result of Walton's underlying unlawful act of firing a gun into a habitation, the

offenses were "inextricably part of the same conduct" and should have been merged at sentencing. *Walton* at ¶ 56. However, "[b]oth of these cases are pre-*Ruff*. As such, neither acknowledges that offenses involving multiple victims result in a separate animus. Consequently, they are inapplicable, here." *State v. Howard-Ross*, 7th Dist. Mahoning No. 13 MA 0168, 2016-Ohio-1438, ¶ 17.

{¶ 54} We find that the trial court did not err in not merging the offenses of murder and improperly discharging a firearm into a habitation at sentencing. Appellant committed the murder against Foxx while the offense of discharging a firearm into a habitation identified Calhoun as the victim. The offenses involved separate victims, and each offense caused a "separate, identifiable harm." *Ruff*, 2015-Ohio-995 at ¶ 25-26; *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 206. Accordingly, the offenses were of dissimilar import. *Ruff* at ¶ 26.

{¶ 55} Appellant's third assignment of error is affirmed in part and reversed in part, and the matter is remanded to the trial court for the sole purpose of issuing a nunc pro tunc conviction entry and a nunc pro tunc sentencing judgment entry to reflect the offense of improperly discharging a firearm into a habitation for which appellant was convicted. However, such an administrative correction does not necessitate a new sentencing hearing, and the trial court's sentence in all other respects is affirmed. *See State v. Chisenhall*, 12th Dist. Clermont Nos. CA2015-07-055 and CA2015-07-063, 2016-Ohio-999, ¶ 42.

{¶ 56} Judgment affirmed in part, reversed in part, and the matter is remanded to the trial court for the limited purpose of issuing a nunc pro tunc conviction entry and a nunc pro tunc sentencing entry.

S. POWELL, P.J., and PIPER, J., concur.