[Cite as *Meranda v. Meranda*, 2026-Ohio-221.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

|  |  |  |
|---|---|---|
| SETH A. MERANDA, | : | |
| Appellee, | : | CASE NO. CA2025-05-009 |
| vs. | : | OPINION AND JUDGMENT ENTRY 1/26/2026 |
| MAURA L. MERANDA, | : | |
| Appellant. | : | |
|  | : | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR20230640

Godbey Law, LLC, and Edwin L. Vardiman, Jr., for appellee.

Law Offices of Nicholas A. Kulik, LLC, and Nicholas A. Kulik, for appellant.

**O P I N I O N**

**PIPER, J.**

{¶ 1} Appellant, Maura L. Meranda ("Wife"), appeals a decision of the Brown County Court of Common Pleas, Domestic Relations Division, granting a divorce between her and appellee, Seth A. Meranda ("Husband"), wherein their property was divided.

## I. Factual and Procedural Background

{¶ 2}    Husband owns 100 percent of the Nixon-Meranda Estate Winery, LLC, along with the associated real estate, vines, barn, winery buildings, and house (the "Ripley property"). Husband purchased this property in 1992 on a land contract from his grandparents and paid it off during his first marriage. After his first spouse died, Husband was left to raise his two children and continue the business on his own. Sometime later, Husband met Wife, who was also widowed and raising her own two children in Michigan. Husband and Wife were married on July 23, 2013, and Wife moved in with Husband. When Husband entered the marriage, he owned the Ripley Property free and clear from any encumbrance, and at no time did he add Wife's name to the deed of the property.

{¶ 3}    Husband then assisted Wife in preparing her Michigan home for sale. The Michigan home was sold in February 2015 for $105,538.47, with the proceeds deposited into their joint bank account. However, within four months, Husband and Wife spent $103,000 on credit card debts, skiing trips, downtown holidays, a truck purchased for Wife, large energy bills, and other vacations. On September 24, 2015, the parties signed a mortgage on the Ripley property for $199,285,52 pursuant to a refinancing.

{¶ 4}    Husband and Wife successfully operated the winery with Husband largely handling the production of wine while Wife contributed labor in sales and marketing. However, in 2018, a "drift" of sprayed chemicals from a neighboring farm damaged their grape vines and limited wine production. Thereafter, the winery struggled to remain profitable.

{¶ 5}    After ten years of marriage, Husband filed a Complaint for Divorce without Minor Children on October 31, 2023. Wife filed an answer and counterclaim on November 3, 2023. Around the same time, Husband was in the process of cleaning up from the harvest and producing wine at the Ripley property. However, Wife filed a civil protection

order against Husband and denied him access to the land and locked him out of the winery. Husband attempted to enter to perform the necessary maintenance, but Wife had Husband arrested and removed. Although Wife was aware of the necessary maintenance, she failed to complete it herself or secure arrangements for it to be performed. Almost one year later, Husband was able to obtain permission from the domestic court to access the business property, but by that time much of the winemaking equipment was damaged, a significant amount of the wine was spoiled or missing, and most of the vines were permanently damaged and would no longer yield a crop.

{¶ 6} The divorce proceeded to a three-day final hearing before a magistrate on September 17, 18, and November 19, 2024. Husband presented testimony from Wife, himself, a winery customer, two winery experts, and the couple's tax consultant. Wife presented testimony from a winery employee, her son, her daughter, and herself. On January 17, 2025, the magistrate issued a decision ordering that the Ripley property, including the house, barns, winery buildings, vineyards, and all parts thereof be put up for sale, with the proceeds applied to all marital debts and any proceeds remaining thereafter divided equally between the parties.

{¶ 7} On January 30, 2025, Husband filed objections to the magistrate's decision and Wife filed a response on February 7, 2025. On May 19, 2025, the court journalized an entry overruling in part and sustaining in part Husband's objections, and accepted and adopted that portion of the magistrate's decision not inconsistent with its entry. Relevant to this appeal, the trial court overruled the magistrate's decision as to the Ripley property and found that Wife failed to establish a marital interest in the property, despite certain renovations to the house and grounds, because she failed to establish the increase in value to the property, if any. Instead, the trial court found that Wife was only entitled to a one-half interest in the reduction of the principle on the mortgage during the marriage,

amounting to $29,235.79.

{¶ 8}   On appeal, Wife raises two assignments of error for our review.

## II. Legal Analysis

{¶ 9}   Wife's Assignment of Error No. 1 states:

{¶ 10}   THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING THE RIPLEY PROPERTY TO APPELLEE BECAUSE APPELLANT ESTABLISHED A MARITAL INTEREST SUBJECT TO EQUITABLE DISTRIBUTION.

{¶ 11}   In her first assignment of error, Wife argues the trial court erred by granting Husband the Ripley property free from any interest of Wife. Wife contends that the evidence at trial clearly traced the use of her separate funds from the sale of her Michigan house to various improvements to the family home and winery business. Specifically, Wife asserts she contributed to a kitchen remodel, new flooring and furnishing, as well as purchases of vines, a leaf remover, and chemicals. Wife also notes that she managed the winery's tasting room and contributed her various paychecks and social security checks to the marriage. Therefore, Wife argues that the trial court should have instead ruled one of three ways: (1) entitle her to the value of her premarital Michigan property and one-half of the mortgage reduction as identified in the trial court's decision, (2) order the parties to sell the Ripley property and split the proceeds equally; or (3) award Husband possession of the Ripley property with directions to refinance and determine each party's one-half share. We find Wife's arguments are without merit.

{¶ 12}   In divorce proceedings, a trial court is obligated to determine what constitutes marital property and what constitutes separate property, and then equitably divide the marital and separate property between the spouses in accordance with R.C. 3105.171(B). An appellate court reviews the classification of property as marital or separate under the manifest-weight-of-the-evidence standard and will not reverse a trial

court's classification if it is supported by competent and credible evidence. *Smith v. Smith*, 2023-Ohio-982, ¶ 28 (12th Dist.). An appellate court will not reverse a trial court's property division in a divorce proceeding absent an abuse of discretion. *Id.* at ¶ 29.

{¶ 13} Generally, any real property or interest in real property that was acquired by one spouse prior to the date of the marriage is separate property. R.C. 3105.171(A)(6)(a)(ii). The Ripley property was purchased by Husband prior to the parties' marriage; therefore, that property was Husband's separate property under R.C. 3105.171(A)(6)(a)(ii) and was properly disbursed to him. *See* R.C. 3105.171(D) (requiring a court to disburse a spouse's separate property to that spouse); *Patterson v. Patterson*, 2006-Ohio-1786, ¶ 34 (12th Dist.). The refinancing of separate property after a subsequent marriage alone does not convert separate property into marital property where the refinancing was not to purchase property. *Kohus v. Kohus*, 2003-Ohio-2551, ¶ 21 (12th Dist.).

{¶ 14} Further, any passive income and appreciation acquired from separate property by one spouse during the marriage remains separate property. R.C. 3105.171(A)(6)(a)(iii). However, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage, is classified as marital property. R.C. 3105.171(A)(3)(a)(iii). "Passive income" is defined as "income acquired other than as a result of the labor, monetary, or in-kind contribution of either spouse." R.C. 3105.171(A)(4). The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of evidence, to trace the asset to separate property. *Smith*, 2023-Ohio-982 at ¶ 33. This includes the burden to prove appreciation in the value of separate property. *Bozhenov v. Pivovarova*, 2023-Ohio-2437, ¶ 13.

{¶ 15} The Ohio Supreme Court has held that R.C. 3105.171(A)(3)(a)(iii)

"unambiguously mandates that when *either* spouse makes a labor, money, or an in-kind contribution that *causes* an increase in the value of separate property, that increase in value is deemed marital property." (Emphasis sic.) *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 400 (1998). Therefore, if the separate property of one spouse appreciates during the marriage due to the labor, monetary, or in-kind contribution of either spouse, the appreciation is marital property. R.C. 3105.171(A)(3)(a)(iii). If, however, the appreciation of the separate property is attributable to conditions outside the control of the parties, such as inflation, the property's location, or market-driven, the increase in value is passive appreciation and remains separate property. *Id.* at 401; *Harrington v. Harrington*, 2008-Ohio-6888, ¶ 12 (4th Dist.); *Smith v. Smith*, 2008-Ohio-799, ¶ 8 (10th Dist.).

{¶ 16} Here, Wife failed to satisfy her burden to prove that any improvements she made to the Ripley property caused an appreciation in its value. Significantly, Wife had an appraisal of the Ripley property but withdrew that exhibit. Although Wife identified certain expenditures for the Ripley property and business, there was no testimony or evidence to quantify the value of these contributions or establish that any of these in fact increased the value of the Ripley property. *See Bozhenov* at ¶ 18. It is well established that routine maintenance and cosmetic changes generally do not convert appreciation from separate to marital property. *Id*. Furthermore, the degree to which any contributions can be traced specifically to the proceeds of Wife's Michigan property is questionable, as the evidence indicated that the proceeds were quickly spent on various trips, luxuries, and bills. Accordingly, the trial court did not abuse its discretion when it found that Wife was not entitled to any interest in the Ripley property beyond one-half of the mortgage reduction.

{¶ 17} Wife's first assignment of error is overruled.

{¶ 18} Wife's Assignment of Error No. 2 states:

{¶ 19} THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND THE APPELLANT COMMITTED FINANCIAL MISCONDUCT AND WASTE TO THE RIPLEY PROPERTY AND WINERY BUSINESS AND IMPROPERLY AWARDED THE ENTIRE BUSINESS INTEREST TO APPELLEE.

{¶ 20} In her second assignment of error, Wife argues the trial court improperly found that she had committed financial misconduct and waste to the winery business and improperly awarded the entire business interest to Husband. Wife argues that the civil protection order did not prevent Husband from operating the winery business, rather, Husband failed to properly arrange times for entry to the Ripley property through his attorney. Therefore, Wife contends that Husband at least contributed to the dissipation of the winery's assets by failing to conduct maintenance both before and after the domestic court's order granting him access to the business.[1] We disagree with Wife and find that the possibility that Husband could have done more for the winery does not excuse her own inaction and misconduct.

{¶ 21} An appellate court employs the manifest-weight-of-the-evidence standard when reviewing a trial court's determination that a party engaged in financial misconduct. *Robinson v. Robinson*, 2013-Ohio-435, ¶ 14 (12th Dist.). The reviewing court weighs the

---

1. We note that the second assignment of error in Wife's brief is almost entirely devoid of citations to the record, save for one reference to the civil protection order. App.R. 16(A)(3) requires that an appellate brief contain "[a] statement of the assignments of error presented for review, *with reference to the place in the record where each error is reflected*." (Emphasis added.) App.R. 16(A)(7) further provides that the brief must contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, *and parts of the record on which appellant relies*." (Emphasis added.) Where an appellant has failed to comply with App.R. 16(A) by omitting citations to that portion of the record where an alleged error has occurred, we have declined to scour the entire record searching for such error. *See State v. Young*, 2021-Ohio-2541, ¶ 65, fn. 7 (12th Dist.); *State v. Wilson*, 2019-Ohio-338, ¶ 27 (12th Dist.). This court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment is based. *State v. Baker*, 2024-Ohio-2856, ¶ 53 (12th Dist.). Nevertheless, we continue our analysis.

evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact "clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." *Smith v. Smith*, 2017-Ohio-7463, ¶ 10 (12th Dist.). The burden of proving financial misconduct is on the complaining party. *Id.*

{¶ 22} Pursuant to R.C. 3105.171(E)(4), financial misconduct includes, but is not limited to, "the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." Financial misconduct implies some type of wrongdoing such as interference with the other spouse's property rights. *Garcia v. Samano*, 2019-Ohio-3223, ¶ 19 (12th Dist.). In cases of financial misconduct, "'typically, the offending spouse . . . either profit[s] from the misconduct or intentionally defeat[s] the other spouse's distribution of marital assets.'" *Id.*, quoting *Taub v. Taub*, 2009-Ohio-2762, ¶ 33 (10th Dist.). Upon finding financial misconduct, it is within the discretion of the trial court to "compensate the offended spouse with a distributive award or with a greater award of marital property." *Irvin v. Eichenberger*, 2020-Ohio-4962, ¶ 35 (10th Dist.); R.C. 3105.171(E)(4).

{¶ 23} Here, Husband testified that winery operations and vineyard maintenance required "flexibility . . . 'cause you're dealing with nature." Depending on the season, weather, and condition of the vines, Husband would work long hours at different tasks in different parts of the property. Husband further testified that the civil protection order eliminated all flexibility and limited his ability to operate the winery properly. Even after the domestic court specifically granted Husband permission to return, Wife still locked him out of the winery.

{¶ 24} Even if Husband was typically responsible for tending to the vines and other wine production tasks, Wife never made other arrangements to take care of the vines or winery equipment in his absence. This led to equipment being damaged, spoilage of

product, and the destruction of vines. Further, the trial court properly recognized that Wife never gave a full accounting for all wine sales, and she freely deposited business funds in her personal account and those of her children. Accordingly, the trial court properly found that Wife intentionally defeated Husband's attempts to operate the winery and took the winery's limited profit for herself.[2]

{¶ 25} The loss of product and damage to the vines and equipment is a great financial loss to the winery and imperils its future profitability. Therefore, the trial court properly found that Wife's misconduct negated any marital interest she created from her contributions in sales and marketing. Consequently, we find that the trial court did not abuse its discretion in awarding Husband the entirety of the winery business.

{¶ 26} Wife's second assignment of error is overruled.

### III. Conclusion

{¶ 27} In light of the foregoing, we conclude the trial court did not err in awarding the Ripley property to Husband, or in awarding Husband the entirety of the winery business in compensation for Wife's financial misconduct. Both of Wife's assignments of error are overruled.

{¶ 28} Judgment affirmed.

HENDRICKSON, P.J., and SIEBERT, J., concur.

---

2. We note that the trial court carefully examined the record and that its entry went to great lengths to articulate and support its findings as to Wife's misconduct. Nothing about the trial court's determinations are unsupported by the record or otherwise unreasonable.

- 10 -

---

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Brown County Court of Common Pleas, Domestic Relations Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Robert A. Hendrickson, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Melena S. Siebert, Judge