[Cite as *Irvin v. Eichenberger*, 2020-Ohio-4962.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Maxine C. Irvin,                               :

    Plaintiff-Appellee,                   :

                                    No. 19AP-417

v.                                             :          (C.P.C. No. 14DR-4674)

Raymond L. Eichenberger,                       :          (REGULAR CALENDAR)

    Defendant-Appellant.                  :

---

D E C I S I O N

Rendered on October 20, 2020

---

**On brief:** *Maxine C. Irvin*, pro se. **Argued:** *Maxine C. Irvin.*

**On brief:** *Raymond L. Eichenberger*, pro se. **Argued:** *Raymond L. Eichenberger.*

---

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations, Juvenile Branch

BRUNNER, J.

{¶ 1} Defendant-appellant, Raymond L. Eichenberger, appeals a decision issued on May 30, 2019 by the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, after a remand from this Court in *Irvin v. Eichenberger*, 10th Dist. No. 16AP-657, 2017-Ohio-5601 ("*Eichenberger I*"). The decision now on appeal amends a divorce decree originally entered on September 7, 2016 to bring it into compliance with law and address certain aspects of the trial court's earlier decision as identified in the *Eichenberger I* appellate decision. For the reasons that follow, we overrule or decline to address each of Eichenberger's eleven assignments of error and affirm. As a result of our affirmance, Eichenberger's net result of offsets is that he is due a distribution from Irvin of $8,172.63. His $3,500.00 bond payment shall be returned when and if the case ends in a final judgment with no appeals pending and no debts outstanding for which he bears the responsibility of payment. All parts of the decree not specifically overruled in

*Eichenberger I* remain in force and the May 30, 2019 amendments to the decree are affirmed in full.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   In *Eichenberger I*, we reviewed the full history of this case from filing of the complaint in December 2014 to the divorce decree in September 2016 and it is not sufficiently relevant to this appeal to bear repeating in its full length here.  *Id.* at ¶ 2-37.  Suffice it to say that on December 30, 2014, plaintiff-appellee, Maxine Irvin, filed to divorce Eichenberger.  *Id.* at ¶ 2.  Due to Eichenberger's conduct, the trial court concluded that Eichenberger was hiding assets, had engaged in financial misconduct, and determined to make an equitable (rather than equal) division of the known assets that resulted in an award to Eichenberger of $5,357.82 (that net result took into account $50,000.00 Eichenberger had already received during the course of the litigation as a result of a qualified domestic relations order ("QDRO")).  *Id.* at ¶ 21, 37.

{¶ 3}   Eichenberger sought and received a stay of the September 2016 decree pending appeal, but the stay was conditioned on the posting of $43,000 bond or, in the alternative, making deposits of $500 per month with the Franklin County Clerk of Courts beginning December 1, 2016.  (Nov. 2, 2016 Stay Order.)  Eichenberger made the first payment of $500 on November 29, 2016.  (Docket 14DR-4674.)  But on January 17, 2017, when Eichenberger did not post bond or make a further payment for the month of January, Irvin filed a motion to enforce the decree.  (Jan. 17, 2017 Mot. to Enforce.)  Eichenberger immediately resumed making payments and thereafter made payments on January 18, January 30, March 8, April 6, May 10, and June 9, 2017.  Irvin therefore withdrew her motion.  (Apr. 21, 2017 Mot. Withdrawn.)  When we issued our appellate decision in June 2017, Eichenberger had made seven payments.

{¶ 4}   In our June 29, 2017 decision, we affirmed in part and reversed in part the trial court's decree.  *Eichenberger I* in passim.  First, we reversed a finding that the parties should make division of their Social Security benefits but noted that such benefits could be considered by the trial court in disposing of the remainder of the marital property.  *Id.* at ¶ 41.  Second, we found that the Cardinal Health Account in Irvin's name was accumulated during the marriage and was marital property.  *Id.* at ¶ 62.  Third, we noted that the exact figure for the Scott's Fidelity 401(k) in Irvin's name was listed by the trial court as $308,332.85, but that such a figure appeared nowhere in the appellate record and was not

supported by evidence in the record. *Id.* at ¶ 64. Fourth, we held the trial court had erred in stating the date Eichenberger filed certain objections to a magistrate's ruling and that the trial court had consequently erred in finding the objections to have been untimely. *Id.* at ¶ 76-79. Fifth, we noted that the trial court had indicated an inventory of personal property was attached to the decree as an exhibit, but no such exhibit was attached. *Id.* at ¶ 80. Finally, we noted that, in calculating Eichenberger's arrearage of unpaid maintenance payments, the trial court omitted to consider that Eichenberger had, by Irvin's admission, made at least some of the required payments. *Id.* at ¶ 84-87. In concluding, we clarified that the divorce decree was affirmed in all respects except those specifically indicated; we said, "[t]he decree of divorce issued by the trial court is reversed in the parts indicated above and otherwise affirmed." *Id.* at ¶ 88, in passim.

{¶ 5} Eichenberger requested that we reconsider our decision and, while that request was pending, suggested that the trial court refrain from taking action on the case due to a lack of jurisdiction. (July 7, 2017 Mot. to Recons.; Aug. 17, 2017 Mot. to Stay for Lack of Jurisdiction.) We declined to reconsider on November 28, 2017. *Irvin v. Eichenberger*, 10th Dist. No. 16AP-657 (Nov. 28, 2017) (memorandum decision) ("*Eichenberger II*").

{¶ 6} Following that decision, Eichenberger again suggested the trial court not take any further action on the case while he awaited word from the Supreme Court of Ohio on whether or not it would consider a further appeal. (Nov. 30, 2017 Mot. to Stay for Lack of Jurisdiction.) The Supreme Court declined to hear the case in May 2018. *Irvin v. Eichenberger*, 152 Ohio St.3d 1462, 2018-Ohio-1795.

{¶ 7} Thereafter, Eichenberger filed requests with the trial court seeking a status conference and release of the $3,500 Eichenberger had paid as surety for the appellate stay. (July 2, 2018 Mot. to Release Bond; July 12, 2018 Mot. for Status Conference.) In response, Irvin (now proceeding pro se), filed a motion requesting that the divorce decree be enforced as modified by our decision in *Eichenberger I*. (July 13, 2018 Mot. to Enforce.) By that motion, Irvin sought for the $3,500 bond to be released to her in partial satisfaction of amounts owed to her as a consequence of the continuing failure of Eichenberger to make payments required by the divorce decree, even after Eichenberger had ceased (in July 2017) making monthly $500 payments to keep the stay in place. *Id.*

{¶ 8}    The record does not reflect that the trial court took any action on the $3,500, but Eichenberger nonetheless filed a motion to reconsider noting that he received a notice via e-mail indicating that his motion to release the funds had been denied.  (Aug. 16, 2018 Mot. to Recons. at 2.)  He simultaneously withdrew the request for a status conference. (Aug. 16, 2018 Withdrawal of Mot. for Conference.)  Shortly thereafter, Eichenberger filed a motion to disqualify the trial judge and included a copy of the e-mail stating that his request had been subject to a "JUDICIAL DECLINE" and that the request for the return of funds was "not well taken."[1]  (Oct. 5, 2018 Disqualification Aff. at 10, filed Oct. 11, 2018.) On October 30, 2018, the Supreme Court declined to disqualify the trial judge, noting that this was Eichenberger's third attempt to disqualify her during this litigation.  (Oct. 30, 2018 Supreme Court Entry at 1, filed Oct. 31, 2018.)

{¶ 9}    Approximately one week after the disqualification issue was resolved, the trial court set a case management order setting a hearing for December 18, 2018 and requiring the parties to update the trial court with proof of payments made, sent, or received between them for expenses during the pendency of the divorce proceedings. (Nov. 9, 2018 Case Mgt. Order.)  Eichenberger sought to appeal that order to this Court on December 10, 2018.  (Dec. 10, 2018 Notice of Appeal.)  However, this Court sua sponte dismissed the appeal for lack of a final appealable order.  *Irvin v. Eichenberger*, 10th Dist. No. 18AP-946 (Dec. 19, 2018) (Journal Entry).[2]

{¶ 10}    On January 7, 2019, in what appears to have been an action on Irvin's motion to enforce the decree, the trial court issued summons ordering Eichenberger to appear and show cause why he should not be found in contempt for failure to abide by an order of the court.  (Jan. 7, 2019 Show Cause.)  A service return filed on February 18, 2019 reflected that Eichenberger was personally served and he filed a motion to quash service on February 19. (Feb. 18, 2019 Service Return; Feb. 19, 2019 Mot. to Quash.)  The trial court did not rule on the motion to quash before the February 20 hearing.  Eichenberger failed to appear on February 20.  (Feb. 20, 2019 Hearing Tr., filed Aug. 29, 2019.)  The trial court issued a capias warrant for his arrest.  (Feb. 26, 2019 Capias.)

---

[1] We note that the "JUDICIAL DECLINE" Eichenberger refers to does not appear on the trial court's docket.
[2] Eichenberger requested reconsideration of this entry, and we declined to reconsider on January 14, 2019. *Irvin v. Eichenberger*, 10th Dist. No. 18AP-946 (Jan. 14, 2018) (Journal Entry).

{¶ 11}  On February 28, 2019, Eichenberger filed a motion to set aside the warrant for his arrest, pointing out that he had filed a motion to quash the summons, alleging that the court lacked jurisdiction over the case since he had filed a mandamus action in this Court on February 19 and arguing that, in any case, the service of the summons was "unlawful, null and void."  (Feb. 28, 2019 Mot. to Set Aside at 2.)  Eichenberger's mandamus action sought a writ ordering the trial judge to return the $3,500 paid for the appellate stay and a ruling conforming the divorce decree to the holdings in *Eichenberger I.*  (Feb. 19, 2019 Mandamus Compl. 19AP-98 at ¶ 15-16, 18-19.)  Paradoxically, given that he sought a writ ordering the trial court to rule, he also sought orders staying the divorce proceedings during the pendency of the mandamus action.   (March 15, 2019 Mot. to Stay 19AP-98; Apr. 26, 2019 Mot. to Stay 19AP-98.)  During this same period of time, Eichenberger was eventually located and arrested on the warrant.  (Mar. 13, 2019 Capias Executed.)  Records reflect that he was arrested on March 13, 2019 and released on his own recognizance on March 14, but he was ordered to appear the following day, March 15, 2019.  (Mar. 14, 2019 Recognizance Bond.)

{¶ 12}  The record does not include a transcript of the proceedings that took place on March 15.  On March 18, hearings on the various pending motions were continued for further discussion until April 9, 2019.  (Mar. 18, 2019 Continuance.)

{¶ 13}  On April 1, 2019, Eichenberger again filed an affidavit seeking to disqualify the trial judge.  (April 1, 2019 Disqualification Aff.)  On April 16, 2019, the Supreme Court again declined to disqualify the trial judge.  (Apr. 16, 2019 Supreme Court Entry.)  The same day, the trial court set a new hearing date of May 8, 2019 for the pending motions.  (Apr. 16, 2019 Continuance.)

{¶ 14}  During the hearing on May 8, Eichenberger again argued that the pendency of his original action for mandamus removed the trial court's jurisdiction to proceed in the divorce case.  (May 8, 2019 Hearing Tr. at 5-7, 27-28.)  He also withdrew all of his pending motions and requests except for the release of the $3,500.  *Id.* at 8-9.  Irvin, proceeding pro se on her motion to enforce, attempted to present some evidence regarding certain tax payments relevant to the decree, but the trial court ultimately declined to accept them because Irvin was not presenting her request for enforcement of the decree in the "right way."  *Id.* at 11-12, 18, 29-30.  The parties also discussed retrieval of personal property from

each other and Eichenberger's persistent refusal to sign a quit-claim deed to the marital house as he had been ordered to do in the original divorce decree.  *Id.* at 20-23.  The trial court ultimately dismissed Irvin's enforcement motion and took under advisement the issue of reforming the divorce decree in light of our remand in *Eichenberger I.  Id.* at 29, 35.

{¶ 15}  On May 30, 2019, the trial court issued a decision and entry addressing the assignments of error on which this Court remanded in *Eichenberger I.*  (May 30, 2019 Decision & Entry.)  First, it agreed that Social Security benefits are not subject to division and, accordingly, assigned to each party their own Social Security benefits without attempting to divide them.  *Id.* at 1-2.  Second, the trial court agreed that the Cardinal Health account was marital property but, in light of high cost in time and fees of Eichenberger's string of filings to no effect, dilatory tactics, disobedience to court orders, and defiance of discovery demands, the trial court concluded that the totality of the circumstances showed that it was equitable to award the full contents of that account to Irvin.  *Id.* at 2-3.  Third, the court utilized expert testimony from the trial that the Scott's Fidelity 401(k) account was 30.1 percent separate property and 69.9 percent marital property in conjunction with Irvin's testimony as to the general value of her own account ($308,000.00) to determine that $92,708.00 was Irvin's separate property, that Eichenberger's 50 percent share of the remainder was $107,646.00, and that he had previously been awarded $50,000.00 via QDRO, entitling him to a distribution of $57,646.00.  *Id.* at 3-4; *see also* Tr. at 64, 150-51.  Fourth, the trial court referred to testimony in a March 15, 2019 hearing (which is not preserved in the appellate record) and determined that even though Eichenberger had filed timely objections to the magistrate's decision at issue in *Eichenberger I*, he did not obtain a transcript to substantiate those objections and the trial court accordingly dismissed them.  (May 30, 2019 Decision & Entry at 4-5.)  Fifth, again referencing testimony that has not been preserved in the appellate record, the trial court ordered division of specific items of personal property.  *Id.* at 5-6. Sixth, again referencing testimony taken on March 15, 2019 that has not been preserved in the appellate record, the court found that Eichenberger had made four payments of $200.00 to Irvin and that one more payment of $200.00 was yet due.  *Id.* at 7.  It altogether determined that an offset of $6,520.27 was appropriate to account for the payments made

by Eichenberger on prior orders and his half of real estate taxes paid to Irvin after she initially paid in full when Eichenberger had refused. *Id.* at 8.

{¶ 16} Eichenberger now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 17} Eichenberger presents eleven assignments of error for review:

> [1.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION BY FAILING TO ISSUE A CLEAN, NEW DIVORCE DECREE IN ITS ENTIRETY AS THE REMAND DECISION.
>
> [2.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION IN FAILING TO RULE ON THE MAY OF 2018 REMAND OF THIS COURT FOR OVER A YEAR, AND AS A RESULT GROSSLY VIOLATED THE DUE PROCESS AND CONSTITUTIONAL RIGHTS OF THE DEFENDANT.
>
> [3.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION IN UNLAWFULLY INCARCERATING THE DEFENDANT FROM MARCH 12, 2019 THROUGH MARCH 14, 2019 DUE TO AN ALLEGED FAILURE TO ATTEND A CONTEMPT HEARING, WHEN THE UNDERLYING ORDER WAS ILLEGAL AND ISSUED ON A MOTION WHICH WAS NOT A CONTEMPT MOTION.
>
> [4.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION BY FAILING TO ADJUST THE PROPERTY DISTRIBUTION TO THE BENEFIT OF THE DEFENDANT IN LIGHT OF THE MORE ADVANTAGEOUS SOCIAL SECURITY BENEFITS OF THE PLAINTIFF.
>
> [5.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION BY HOLDING AN ORAL EVIDENTIARY HEARING ON MARCH 15, 2019 CONCERNING THE REMANDED ISSUE OF ONE OF THE DEFENDANT'S OBJECTIONS IN THE CASE BASED ON DISCOVERY ISSUE. THE UNLAWFUL FAILURE OF THE JUDGE TO CONSIDER THE ORIGINAL MAGISTRATE'S OBJECTION ON A PRE-TRIAL DISCOVERY ISSUE WAS, AS A MATTER OF LAW, MOOT AFTER THE ORIGINAL ENTRY OF DIVORCE WAS ENTERED.
>
> [6.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION BY FAILING TO RELEASE TO THE DEFENDANT FOR OVER A YEAR'S PERIOD OF

TIME THE $3,500 IN CASH PAYMENTS MADE TO THE CLERK OF COURT BY THE DEFENDANT AS IN LIEU OF APPEAL BOND CONCERNING THE ORIGINAL APPEAL OF THE DIVORCE DECREE IN THIS CASE. THE $3,500 IN CASH PAYMENTS SHOULD HAVE BEEN RELEASED TO THE DEFENDANT IN MAY OF 2018, AND HAS NOT BEEN RELEASED TO DATE.

[7.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION IN FAILING TO PROPERLY VALUE THE SCOTT COMPANY 401 K, BY ACCEPTING EXPERT TESTIMONY AS TO THE VALUE OF A DEFINED CONTRIBUTION PENSION BENEFIT AND BY FAILING TO USE THE PROPER VALUATION TO EQUITABLY DIVIDE THE ASSET TO THE DEFENDANT.

[8.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION IN FAILING TO PROPERLY VALUE THE CARDINAL HEALTH 401K AND THEN FAILED TO EQUITABLY DIVIDE THE ENTIRELY MARITAL ASSET TO THE DEFENDANT.

[9.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION IN DEPRIVING THE DEFENDANT OF AN EQUITABLE DISTRIBUTION OF THE MARITAL ASSETS OF THE PARTIES. THE REDUCTION IN PROPERTY DISTRIBUTION WHICH RESULTED WAS AN UNLAWFUL AND ONEROUS PENALTY, VIOLATED THE DUE PROCESS RIGHTS OF THE DEFENDANT, AND RESULTED IN THE DEFENDANT RECEIVING LESS THAN 5% OF THE MARITAL ASSETS OF THE PARTIES.

[10.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION IN HOLDING AN ORAL EVIDENTIARY HEARING CONCERNING THE DIVORCE APPEAL REMAND ON MARCH 25, 2019, WITHOUT PROPER NOTICE TO THE PARTIES, AND WITHOUT THE LEGAL AUTHORITY TO CONDUCT SUCH AN EVIDENTIARY HEARING AFTER REMAND WITHOUT A NEW TRIAL ORDER FROM THIS COURT.

[11.] THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED HER DISCRETION BY FAILING TO RULE ON, APPROVE, AND FILE THE PROPOSED QDRO SUBMITTED TO THE COURT BY DEFENDANT IN HIS MOTION OF JULY 22, 2019.

We address these in order except for the first assignment of error, which we address last.

## III.  DISCUSSION

### A.  Standard of Review

{¶ 18}  Although an equal division of property is appropriate as a starting place for a trial court's analysis, a domestic relations court enjoys broad discretion in fashioning a division of marital property, and its decision should not generally be reversed absent an abuse of that discretion.  *See Cherry v.* Cherry, 66 Ohio St.2d 348 (1981), paragraph two of the syllabus; *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95 (1988).  A reviewing court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion.  *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131 (1989).  However, this court has frequently remarked that " 'no court has the authority, within its discretion, to commit an error of law.' "  *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 18, quoting *State v. Akbari*, 10th Dist. No. 13AP-319, 2013-Ohio-5709, ¶ 7.  Thus, we review Eichenberger's assignments of error regarding the property division for abuse of discretion but, to the extent they bear on questions of law, we review such legal questions de novo.

### B.  Second Assignment of Error – Whether the Trial Court Abused Its Discretion in Not Entering a New Judgment that Addressed the Remanded Issues for Approximately Two Years

{¶ 19}  We issued *Eichenberger I* on June 29, 2017 and the trial court completed its decision implementing our remand on May 30, 2019.  (May 30, 2019 Decision & Entry.) *Eichenberger I.*  Eichenberger complains about the length of this period of time and about the approximately five years it has taken for the case to "excruciatingly wind its way to this point where the Defendant [i]s once again forced to file a second Appeal in the matter to correct rather obvious and basic errors of the trial Judge in this case, including remaining gross errors in property division."  (Eichenberger's Brief at 31-32.)  He notes that, "[t]he trial Judge throughout the matter has obtusely and self-servingly blamed the delays in the matter on the Defendant."  *Id.* at 32.  He calls the length of time the case has been pending "outrageous," a "gross breach of duty," a "terrible violation of rights," and opines that it is "ridiculous" that he had to file a mandamus action to prod the trial judge into action.  *Id.* at 32, 34.

{¶ 20}  As we have taken pains to detail above, Eichenberger has managed to delay, and obstruct, and has obfuscated virtually every stage of this case.  *See supra* at ¶ 3, 5-6, 8-

13; *see also, e.g.*, *Eichenberger I* at ¶ 5, 8-9, 16, 18-20, 22-23.  In fact, in the very mandamus action that he filed in this Court with the stated goal of forcing the trial judge to take action in the divorce case, he *twice* sought to stay the divorce proceedings because of the pendency of the mandamus case and he repeatedly made the same meritless argument during the hearing for the very order he now appeals.  (May 8, 2019 Hearing Tr. at 5-7, 27-28; Mar. 15, 2019 Mot. for Stay, 19AP-98; Apr. 26, 2019 Mot. for Stay, 19AP-98.)  In other words, Eichenberger simultaneously sought for us to order the trial court to act and sought to prevent it from acting.  Throughout the life of this case, when the trial judge indicated an intention to act or hold a hearing, Eichenberger stalled by filing appeals, requests for reconsideration, disqualification affidavits, or by taking other actions that served to delay, up to and including failing to attend hearings.  *See supra* at ¶ 3, 5-6, 8-13; *Eichenberger I* at ¶ 5, 8-9, 16, 18-20, 22-23.  In short, Eichenberger's own actions have by and large caused delay in this case.

{¶ 21}  We find no abuse of discretion in the trial court's delay because that delay was occasioned almost entirely by Eichenberger's actions.  Eichenberger is a former attorney who utilized a variety of means that an ordinary pro se party is not as likely to be aware of nor to be able to execute as successfully as Eichenberger did to interpose the delay he complains about.  We overrule Eichenberger's second assignment of error.

## C. Third Assignment of Error – The Trial Court's Decision to Issue and Execute a Warrant When Eichenberger Defied a Summons to Appear

{¶ 22}  Eichenberger was arrested on a warrant when he failed to appear for a hearing and was then released on his recognizance.  *See supra* at ¶ 10-11.  That is an unalterable fact.  He was not as a result held in contempt, and there is no judgment against him relating to that brief term of incarceration that is appealable.  Eichenberger asserts that he, "intends to file civil litigation against both the Judge and the Plaintiff concerning his unlawful incarceration and the gross and illegal deprivation of his freedom, but he also wants a strong statement from this Court that the actions of the Judge and the Plaintiff violated his Constitutional rights."  (Eichenberger's Brief at 40.)

{¶ 23}  This Court does not issue advisory opinions. *Lund v. Portsmouth Local Air Agency*, 10th Dist. No. 14AP-60, 2014-Ohio-2741, ¶ 7.  The third assignment of error is overruled.

**D. Fourth Assignment of Error – Whether the Trial Court Abused its Discretion in Failing to Adjust the Equitable Distribution of Assets in Consideration of the Disparity in Eichenberger's and Irvin's Social Security Benefits**

{¶ 24} Eichenberger argues that the Supreme Court in *Neville v. Neville* "makes it clear that a trial Court *needs* to consider the disparity between potential monthly Social Security benefits between divorcing parties." (Emphasis added.) (Eichenberger's Brief at 42, citing *Neville v. Neville*, 99 Ohio St.3d 275, 2003-Ohio-3624.) However, what this Court and *Neville* have actually said is, "while Social Security benefits may not be divided, '[i]n making an equitable distribution of marital property in a divorce proceeding, a trial court *may* consider the parties' future Social Security benefits in relation to all marital assets." (Emphasis added.) *Eichenberger I* at ¶ 41, quoting *Neville* at syllabus; *see also Neville* at ¶ 11. Eichenberger is not entitled to a holding that the trial court must consider the disparity between Social Security benefits in making equitable distribution of marital property in a divorce proceeding.

{¶ 25} We find no abuse of discretion by the trial court in declining to make an adjustment in consequence of the parties' relative Social Security positions.

{¶ 26} We overrule Eichenberger's fourth assignment of error.

**E. Fifth Assignment of Error – Whether the Trial Court Abused its Discretion in Holding a Hearing on March 15, 2019**

{¶ 27} Eichenberger argues that he had insufficient notice of the hearing and that the judge sua sponte called witnesses for the court at the hearing in a "bizarre manner to harm the Defendant, both personally and financially." (Eichenberger's Brief at 43-48.) Because no transcript of the March 15, 2019 hearing exists in the record, we are unable to assess the merits of this assignment of error. *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13 ("[A] bedrock principle of appellate practice in Ohio is that an appeals court is limited to the record of the proceedings at trial."). We therefore presume the regularity of proceedings and overrule Eichenberger's fifth assignment of error. *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, ¶ 14; *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

**F.  Sixth Assignment of Error – Whether the $3,500 in Payments to Secure a Stay in the First Appeal Should Have Been Released to Eichenberger**

{¶ 28} Approximately contemporaneous with the filing of the appeal in *Eichenberger I*, Eichenberger obtained a stay of the decree conditioned on the posting of $43,000 bond or, in the alternative, making deposits of $500 per month with the Franklin County Clerk of Courts beginning December 1, 2016.   (Nov. 2, 2016 Stay Order.) Eichenberger made seven payments of $500 for a total of $3,500 and stopped making payments after our decision was released on June 29, 2017.   *See* Docket 14DR-4674 (reflecting payments on November 29, 2016, January 18, January 30, March 8, April 6, May 10, June 9, 2017).  He now argues that the $3,500 should have been returned to him when the appeal ended.  (Eichenberger's Brief at 48-50.)

{¶ 29}  "The purpose of an appeal bond is to secure the appellee's right to collect on the judgment during the pendency of the appeal."  *State ex rel. Geauga Cty. Bd. of Commrs. v. Milligan*, 100 Ohio St.3d 366, 2003-Ohio-6608, ¶ 21.  In addition, however, Ohio Revised Code, section 2505.14 provides:

> A supersedeas bond shall be payable to the appellee or otherwise, as may be directed by the court, when the conflicting interests of the parties require it, and shall be subject to the condition that the appellant shall abide and perform the order, judgment, or decree of the appellate court and pay all money, costs, and damages which may be required of or awarded against him upon the final determination of the appeal and subject to any other conditions that the court provides. When the final order, judgment, or decree appealed is for the payment of money, the bond may provide that, if the final order, judgment, or decree is not paid upon final affirmance, it may be entered against the sureties on the bond.

In short, a supersedeas bond is posted to obtain a stay (which Eichenberger duly obtained) but may then be used in satisfaction of any eventual judgment.  R.C. 2505.14; Civ.R. 62(B). There is no clear right to have a bond such as Eichenberger obtained returned until an appellate remand has been executed and the final amounts due between the parties are determined.  The trial court did not rule in accord with our remand in *Eichenberger I* until May 30, 2019 and, in the interim, Eichenberger has once again appealed.  Thus, the $3,500 continues to be retained against the possibility that he otherwise may not meet the financial terms of the eventual final order, judgment, or decree.  It follows that it is subject to being

returned to him when and if the case ends in a final judgement with no appeals pending and no debts outstanding for which he bears the responsibility of payment.

{¶ 30} Eichenberger's sixth assignment of error is overruled.

## G. Seventh Assignment of Error – Whether the Trial Court Abused its Discretion in Accepting the Testimony of Irvin and her Expert Accounting Witness as to the Value of the Scott's Fidelity 401(k) Retirement Account

{¶ 31} At the original trial of this matter, Irvin testified that, due to market fluctuations, the value of her Scott's Fidelity 401(k) was approximately $308,000.00. (Tr. at 150-52.) Eichenberger presented nothing to dispute this figure. Irvin also presented the testimony of an expert in the field of forensic accounting and business valuation to the effect that 30.1 percent of the Scott's Fidelity 401(k) was her separate property (making her separate property approximately $92,708.00). (Tr. at 24-29, 64.) Although the expert acknowledged that the account balance as of the start of the marriage had been $34,015.21, she traced the contributions throughout the marriage and determined that the $34,015.21 constituted approximately 30.1 percent of the total contributions to the account. (Tr. at 63-64.) Thus, she reasoned that the account, whatever its current value (which rises and falls with the financial markets), was 30.1 percent Irvin's separate property. *Id.* Although Eichenberger cross-examined the expert, attempting to dispute her qualifications and conclusions, he offered no expert testimony, calculation, or affirmative evidence of his own to counter her methodology of computation or its resulting numbers. (Tr. at 110, 116-18.)

{¶ 32} Eichenberger now argues that the trial court abused its discretion in relying on testimony of the expert to craft its remand decision. Specifically, Eichenberger asserts that the expert's testimony was flawed because the expert could not explain how she arrived at the percentage she did and could not explain how the premarital value of the account "magically became thirty (30) per cent[sic]." (Eichenberger's Brief at 53-55.) Contrary to Eichenberger's assertions, we find no abuse of discretion by the trial court in relying on the expert's method that appears in the record to be intelligible and straightforwardly explained. (Tr. at 63-64.)

{¶ 33} Accordingly, Eichenberger's seventh assignment of error is overruled.

**H. Eighth Assignment of Error – Whether the Trial Court Abused its Discretion in Declining to Divide the Cardinal Health 401(k) Account**

{¶ 34} In the divorce decree, the trial court found that the Cardinal Health 401(k) account was Irvin's separate property.  (Sept. 7, 2016 Divorce Decree at 18.)  Although Irvin (not Eichenberger) was employed at Cardinal Health, because the accumulation of the account and Irvin's employment with Cardinal Health were both entirely during the marriage, we reversed that finding.  *Eichenberger I* at ¶ 62.  Consistent with our decision, on remand the trial court found that the Cardinal Health account was marital property.  (May 30, 2019 Decision & Entry at 2-3.)  Yet, it nonetheless assigned the account to Irvin as an equitable distribution in consequence of Eichenberger's significant and continuing misconduct. *Id.*

{¶ 35} Eichenberger now argues that the trial court erred in its remand entry when it awarded Irvin the Cardinal Health account.  (Eichenberger's Brief at 57-59.)  However, though we reversed some limited findings of the trial court in *Eichenberger I*, we otherwise affirmed the decree and specifically affirmed the finding that Eichenberger had engaged in financial misconduct.  *Id.* at ¶ 47-48, 88.  We made no order of the trial court, nor would we under these circumstances, about how that particular marital property was to be distributed. *Cherry,* 66 Ohio St.2d at paragraph two of the syllabus.  A reviewing court will not modify or reverse a property division unless it finds that the trial court abused its discretion in dividing the property as it did.  *Id.* at 355; *Berish v. Berish*, 69 Ohio St.2d 318 (1982); *Goode v. Goode*, 70 Ohio App.3d 125, 129 (10th Dist.1991).  On the facts as they appear in the record, there is no basis for concluding that the trial court abused its discretion in making a distributive award of the Cardinal Health account to Irvin.

{¶ 36} The trial court found Eichenberger engaged in financial misconduct, and it was within its discretion to "compensate the offended spouse with a distributive award or with a greater award of marital property."  R.C. 3105.171(E)(4); *see also, e.g.*, R.C. 3105.171(E)(5) (permitting punitive awards for substantial and willful failures to disclose financial information of up to three times the value of the undisclosed property).

{¶ 37} Because we find no abuse of discretion, Eichenberger's eighth assignment of error is overruled.

### I.   Ninth Assignment of Error – Whether Eichenberger is Permitted in this Second Appeal to Relitigate the Fairness of the Entire Divorce Decree

{¶ 38} Eichenberger argues that "due to alleged financial misconduct" the trial court made a "debilitating and absurd" division that was "unfair and violated Ohio law." (Eichenberger's Brief at 59-60, 65.)  He states that the case has "languished on for such a lengthy period of time," positing that it would be "impossible to fairly and lawfully rule" in the case without "revisit[ing]" essentially all the findings in the original decree, including those we affirmed on appeal in *Eichenberger I.*  (Eichenberger's Brief at 60, 65.)

{¶ 39} Our prior 37-page appellate decision largely affirmed the court's original divorce decree. *Eichenberger I.*  The domestic court's finding of Eichenberger's financial misconduct has not been disturbed by this Court nor accepted for review by the Supreme Court.   (Sept. 7, 2016 Divorce Decree at 7-10.) *Eichenberger I* at ¶ 47-48, 88; *Eichenberger II*; May 9, 2018 Supreme Court Entry.  It is a fact underpinning the law of the case. *See, e.g.*, *Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, ¶ 11 .  Based on our review of the record, the law of the case and what is permitted by statute, we do not find the trial court's decisions about equitable distributions of marital property to be an abuse of discretion.   *See also* R.C. 3105.171(E)(4) (permitting distributive awards and greater awards of marital property to compensate for financial misconduct); *see also, e.g.,* R.C. 3105.171(E)(5) (permitting punitive awards for substantial and willful failures to disclose financial information of up to three times the value of the undisclosed property).

{¶ 40} Eichenberger's ninth assignment of error is overruled.

### J.   Tenth Assignment of Error – Whether the Trial Court Erred in Taking Additional Testimony and Evidence at Oral Hearings to Reach its Decision on Remand

{¶ 41} Eichenberger argues that the trial court erred by exceeding the scope of our remand in *Eichenberger I*, having held hearings on March 15 and May 8, 2019, at which it considered additional evidence from the parties.   (Eichenberger's Brief at 68-70.)   In *Eichenberger I*, we reversed and remanded so that the divorce decree would appropriately include an exhibit showing the distribution of household personal property. *Eichenberger I* at ¶ 80.  Additionally, Irvin admitted at trial that Eichenberger had made some (she was not specific as to how many) payments under an agreed order but the original divorce decree had been written to reflect that he had not made any payments. *Id.* at ¶ 84-87. We affirmed the decree in large part, reversed on those matters and other limited items, and

"remanded for further proceedings consistent with [our] opinion." *Id.* at ¶ 88. Nothing about our remand prevented the trial court from taking additional evidence on the matters reversed if it determined it needed to. In fact, part of the reason the decision resulted in remand (rather than modifying the decree according to App.R. 12(A)(1)(a)) was to permit the trial court to gather additional facts and evidence if needed to properly account for payments made (or not made) by Eichenberger and to determine the exact status of the disputed personal property. We discern no error here.

{¶ 42} Eichenberger's tenth assignment of error is overruled.

### K. Eleventh Assignment of Error – Whether the Trial Court Erred in Declining to Accept an Additional QDRO Proposed by Eichenberger on July 22, 2019

{¶ 43} Eichenberger argues that the trial judge has refused to rule on a request filed by him on July 22, 2019, in which he sought a QDRO to enable him to extract additional money from Irvin's retirement account. (Eichenberger's Brief at 70-73.) Specifically, he argues, "[t]he failure and refusal of the trial Court to rule upon the Motion to Approve QDRO filed on July 22, 2019, again demonstrates a total disregard by this particular Judge for the financial hardships which she has inflicted upon the Defendant, and a resulting infuriatingly condescending attitude in regard to how this Defendant is supposed to live and exist during the plodding and torturous pendency of a five (5) year old divorce case." *Id.* at 72-73.

{¶ 44} The order under appeal in this case was issued on May 30, 2019 and Eichenberger filed this appeal on June 28, 2019. (May 30, 2019 Decision & Entry; June 28, 2019 Notice of Appeal.) When a case is appealed, interlocutory rulings in a case will merge with the final judgment and become appealable. *Lingo v. Ohio Cent. RR.*, 10th Dist. No. 05AP-206, 2006-Ohio-2268, ¶ 17; App.R. 4(A)(2). But by Eichenberger's admission, the request for the QDRO was not filed with the trial court until July 22, 2019, nearly one month after this appeal was filed. (Eichenberger's Brief at 70.) This issue is not before this Court and we shall not rule on it.

{¶ 45} We decline to address Eichenberger's eleventh assignment of error as the issue is not properly before us and is unripe.

**L. First Assignment of Error – Whether the Trial Court Abused its Discretion by not Issuing a New Divorce Decree that Integrated its May 2019 Holdings**

{¶ 46} Eichenberger argues that the trial court erred by failing to issue a clean new divorce decree in response to our judgment entry and decision in *Eichenberger I*. (Eichenberger's Brief at 28-31.) Yet, in *Eichenberger I*, we held that "[t]he decree of divorce issued by the trial court is reversed in the parts indicated above and otherwise affirmed." *Eichenberger I* at ¶ 88. We did not vacate the entire decree or disturb any part of it other than as expressly indicated in that opinion. *Id.* The trial court was not required by our decision and entry to fashion an entirely new decree. The trial court did not abuse its discretion by addressing the remanded issues in a separate document with the intent that the document serve as an amendment to the initial decree.

{¶ 47} For ease of reference, we enunciate the monetary awards and offsets and arrive at what we perceive from this protracted litigation to be the total value the trial court determined is owed to one side or the other. In the amendment to the divorce decree, the trial court concluded that the value of the Scott's Fidelity 401(k) was $308,000; of which 30.1 percent (or $92,708) was Irvin's separate property. (May 30, 2019 Decision and Entry at 3.) That left $215,292 as marital property, which the trial court determined to divide equally between the parties ($107,646 to each). *Id.* at 3-4. Eichenberger already had obtained a QDRO for $50,000, leaving $57,646 to be distributed to him. *Id.* at 4. We have affirmed that holding. *See supra* at ¶ 31-33.

{¶ 48} In the trial court's remand order now on appeal, the trial court recognized an offset to Eichenberger's share of assets of $6,520.27. (May 30, 2019 Decision and Entry at 8.) Eichenberger has not appealed the amount of that finding. (Eichenberger's Brief in passim.)

{¶ 49} In portions of the original divorce decree that were left undisturbed by *Eichenberger I*, the trial court ordered additional offsets against Eichenberger's share of assets to retire the remaining balances on Discover and Slate credit cards opened and used by Eichenberger in Irvin's name without her knowledge. (Sept. 7, 2016 Divorce Decree at 12.) These offsets were for $4,827.50 and $2,582.00. *Id.* The trial court ordered an additional offset of $317.50 for Eichenberger's share of school and extracurricular expenses

for the parties' daughter. *Id.* at 13. It further ordered $2,700.00[3] in attorney's fees based on prior orders issued earlier in the case. *Id.* The decree imposed an offset of $3,192.00 for payments Eichenberger had been ordered to make throughout the course of the litigation (but had never made) on the Discover and Slate cards (thus affecting then current balances and the accumulation of interest and fees). *Id.*; *see also* July 10, 2015 Mag. Order. The decree also imposed on Eichenberger the costs for Irvin's expert and attorney's fees at trial, which resultant fee-shifting was affirmed by this Court in *Eichenberger I* at ¶ 52-55. *See also* Sept. 7, 2016 Divorce Decree at 14-16. Those offset amounts were $7,900.00 and $21,434.10, respectively. *Id.*

{¶ 50} Accordingly, net of offsets, Eichenberger is due a distribution from Irvin of $8,172.63.[4]

{¶ 51} To clarify, all other parts of the divorce decree affirmed by this court in *Eichenberger I* remain in effect, and all portions of the trial court's May 30, 2019 decision and entry on remand to address matters we outlined for additional consideration by the trial court, exist as an amendment to the original decree. Thus, for example, as set forth in the original decree and not disturbed by *Eichenberger I*, Eichenberger is not entitled to any portion of the house on Pegasus Court and will sign the quit-claim deed as directed by the trial court and affirmed by this Court. *Compare* Sept. 7, 2016 Divorce Decree at 10 (ordering Eichenberger to sign a quit-claim deed to release his rights to the Pegasus Court house) *with Eichenberger I* at ¶ 59 (affirming the decree's award of Eichenberger's dower interest in the house to Irvin) *with* May 8, 2019 Hearing Tr. at 22-23 (Eichenberger refusing to sign the quit-claim deed on the grounds that he intended to reargue that matter before this Court).

{¶ 52} We overrule Eichenberger's first assignment of error.

## IV. CONCLUSION

{¶ 53} We overrule or decline to address each of Eichenberger's eleven assignments of error and affirm the May 30, 2019 decision and entry of the trial court amending its September 7, 2016 divorce decree. Net of offsets, Eichenberger is due a distribution from

---

[3] The attorney's fees awards were $1,200 and $1,500 respectively but the trial court, in what seems to have been a mere clerical error, listed them collectively as totaling $3,700. (Sept. 7, 2016 Divorce Decree at 13; Oct. 26, 2015 Mag. Order on Fees; Feb. 17, 2016 Decision & Entry at 3-5.)

[4] $308,000.00 × 69.9% ÷ 2 - $50,000.00 - $6,520.27 - $4,827.50 - $2,582.00 - $317.50 - $2,700.00 - $3,192.00 - $7,900.00 - $21,434.10 = $8,172.63

Irvin of $8,172.63.  Eichenberger's $3,500.00 bond payment shall be returned when and if the case ends in a final judgment with no appeals pending and no debts outstanding for which he bears the responsibility of payment.  All parts of the decree not specifically overruled in *Eichenberger I* remain in force and the amendments to the decree are affirmed in full.

*Judgment affirmed.*

BROWN and BEATTY BLUNT, JJ., concur.

————————————